UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15-CV-00126-GNS

JEFFERSON L. MULLINS, and
WILLIAM E. HINES                                                                    PLAINTIFFS

v.

U.S. BANCORP INVESTMENTS, INC.                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant U.S. Bancorp Investments, Inc.'s Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Litigation Pending Arbitration (DN 5), Plaintiff's Motion for Summary Judgment (DN 6), and Defendant's Motion to Hold Plaintiff Mullins' Motion for Partial Summary Judgment in Abeyance (DN 10). The motions have been fully briefed and are ripe for decision. For the reasons stated below, the Court **GRANTS** Defendant's motion to compel arbitration and **DENIES** the remaining motions **AS MOOT**.

### I.   SUMMARY OF FACTS AND CLAIMS

As two stockbrokers employed by Defendant U.S. Bancorp Investments, Inc. ("USB"), Plaintiffs William E. Hines ("Hines") and Jefferson L. Mullins ("Mullins"), executed Confidentiality and Non-Solicitation Agreements ("Hines Agreement" or "Mullins Agreement," respectively; collectively "the Agreements"). (Compl. 3, 5, DN 1-2; Compl. Ex. B, at 3, DN 1-2; Compl. Ex. D, at 2, DN 1-2). Under the terms of the Agreements, Plaintiffs were obligated to keep confidential all "Confidential Information," defined as, *inter alia*, the names and contact

information of customers and prospective clients. (Compl. Ex. B, at 1, DN 1-2; Compl. Ex. D, at 1, DN 1-2). With respect to Confidential Information, Plaintiffs agreed they would not:

> [A]t any time either during or subsequent to [their] employment with U.S. Bank disclose or transmit, either directly or indirectly, any Confidential information of U.S. Bank to any person, firm, corporation, association or other entity, and will not remove this information, whether in original, duplicated, or copied form, from the premises of U.S. Bank, except as required in the ordinary course of U.S. Bank's business.

(Compl. Ex. B, at 1; Compl. Ex. D, at 1). In addition to the confidentiality clauses, the Agreements contained non-solicitation provisions which prohibited Plaintiffs from contacting or soliciting USB customers for a period of one year after their employment with USB ended. (Compl. Ex. B, at 1-2; Compl. Ex. D, at 12-2).

When Plaintiffs began their employment at USB they each signed a Form U-4, which is the Uniform Application for Securities Industry Registration or Transfer. (Stalzer Decl. Ex. 1-2, DN 5-3). In the Form U-4, the applicant—*i.e.*, Hines and Mullins—indicated the self regulatory organizations ("SROs")[1] for which he intended to register.[2] The Form U-4 further stated that the applicant agreed:

> [T]o arbitrate any dispute, claim or controversy that may arise between me and my *firm* . . . that is required to be arbitrated under the rules, constitutions, or by-laws of the SROs[3] . . . as may be amended from time to time and that any

---

[1] This term is defined on page 9 of Hines' U-4 and page 10 of the Form signed by Mullins.
[2] As the instructions to Form U-4 note, "[r]epresentatives of broker-dealers, investment advisers, or issuers of securities must use this form to become registered in the appropriate *jurisdictions* and/or *SROs*." Financial Industry Regulatory Authority, Form U-4 Instructions 1, *available at* http://www.finra.org/sites/default/files/AppSupportDoc/p015111.pdf. Hines' Form U-4 requested registration with both the National Association of Securities Dealers ("NASD") and New York Stock Exchange ("NYSE"), in addition to several other SROs. (Stalzer Decl. Ex. 2, at 2). Mullins' Form U-4 requested registration with NASD. (Stalzer Decl. Ex. 1, at 2).
[3] At the time they signed their Form U-4s, Plaintiffs were registered with the NASD, which combined with the NYSE to form the Financial Industry Regulatory Authority ("FINRA") on July 30, 2007. *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir. 2011). The conduct at issue in this case, the mailing of letters and notices and placing phone calls, happened after the merger. Accordingly, because Plaintiffs agreed to be

2

> arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

(Stalzer Decl. Ex. 1, at 9; Stalzer Decl. Ex. 2, at 10).

On September 4, 2015, Mullins and Hines left their employment with USB. (Compl. 4, 5). Following their resignations, both Plaintiffs immediately went to work as stockbrokers for Investment Professionals, Inc. ("IPI"). IPI sent postcards to customers, friends, and family members of Mullins and Hines, providing Plaintiffs' new professional address and including a disclosure statement that "[t]his is for informational purposes only and not a solicitation." (Compl. 6 (alteration in original)).

On September 10, 2015, counsel for USB sent Plaintiffs a letter with the Agreements attached noting that some USB's customers had received the postcards and that "numerous customers have been contacted by telephone as well." (Compl. Ex. F, at 2, DN 1-2). The letter requested certain information and warned that if the information was not received by September 16, 2015, USB would initiate litigation. (Compl. Ex. F, at 2-3). On September 15, 2015, Plaintiffs filed a state court action seeking a declaration of rights concerning: (1) "whether [Plaintiffs] are in violation of their Agreements or other applicable law," (2) "the enforceability of [the] Agreements," and (3) the "rights and duties of the parties under the Agreements." (Compl. 8). On October 16, 2015, USB removed the action to this Court on the basis of diversity jurisdiction. (Notice of Removal).

---

bound by NASD's arbitration rules "as amended from time to time," and the conduct at issue occurred after the merger, Plaintiffs are bound by the rules of FINRA. *See Cody v. SEC*, 693 F.3d 251, 256 n.1 (1st Cir. 2012) (noting that because the conduct at issue occurred before the creation of FINRA, pre-merger rules apply).

3

## II.     JURISDICTION

This Court has jurisdiction over "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" that is "removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

This Court has original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, as is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). Mullins and Hines are citizens of Kentucky, while USB is a corporation organized under the laws of Delaware with its principal place of business in Minnesota. (Compl. 2; Notice of Removal 5, DN 1). USB asserts that a ruling that the Agreements are unenforceable would allow Plaintiffs to solicit clients from USB that Plaintiffs have served in the past, and that the ensuing loss of fees would easily exceed $75,000 based on the client investment assets managed by Plaintiffs. (Notice of Removal 4).

## III.     STANDARD OF REVIEW

In ruling on a motion to compel arbitration, courts apply the summary judgment standard in Fed. R. Civ. P. 56(c). *See Arnold v. Rent-a-Center, Inc.*, No. 11-18-JBC, 2011 WL 1810145, at *2 (E.D. Ky. May 12, 2011) ("This court will treat the motion to compel arbitration as one for summary judgment . . . ."); *Weddle Enters., Inc. v. Treviicos-Soletanche, J.V.*, No. 1:14CV-00061-JHM, 2014 WL 5242904, at *2 (W.D. Ky. Oct. 15, 2014) ("A motion to dismiss based on the existence of a valid arbitration agreement is not evaluated under the usual Fed. R. Civ. P. 12(b)(6) standard.  Instead, courts apply the standard applicable to motions for summary judgment." (citations omitted)). "In order to show that the validity of the agreement is in issue, the party opposing arbitration must show a genuine issue of material fact as to the validity of the

4

agreement to arbitrate, a showing that mirrors the summary judgment standard." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks omitted).

## IV. DISCUSSION

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, a written agreement to arbitrate disputes arising out of contracts involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (quoting 9 U.S.C. § 2).

> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Id.* (citing *Compuserve, Inc. v. Vigny Int'l Fin., Ltd.*, 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)). Generally, any doubts regarding arbitrability are to be resolved in favor of arbitration. *See Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citation omitted). *See also Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984) (holding that the FAA preempts state law regarding arbitration).

Pursuant to Plaintiffs' agreement under the terms of their Form U-4s, the FINRA Rules mandate arbitration of the present dispute. In particular, FINRA Rule 13200 requires arbitration of all disputes "aris[ing] out of the business activities of a member or an associated person . . . ." FINRA Manual, FINRA Rules, 13200(a), *available at* http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4203.  A "member" is "any broker or dealer admitted to membership in FINRA"; an "associated person"

is "a person associated with a member"; and "a person associated with a member" is, *inter alia*, "[a] natural person who is registered or has applied for registration under the Rules of FINRA." FINRA Manual, FINRA Rules, 13100(a), (o), (r), *available at* http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4196. USB asserts—and Plaintiffs do not contend otherwise—that "[t]here is no dispute that [USB] is a member, and that Plaintiffs are associated person[s] under the FINRA rules." (Def.'s Mot. to Compel Arbitration 2, DN 5). Accordingly, Plaintiffs are required to arbitrate their claims against USB under the plain language of FINRA Rule 13200 because this dispute arises from the business dealings between USB and Plaintiffs.

In reaching its conclusion, the Court is persuaded by the ruling of a sister court upholding the arbitration mandated by the Form U-4 and FINRA rules in *Hawkins v. Questar Capital Corp.*, No. 5:12-CV-000376, 2013 WL 5596897, at *2 (E.D. Ky. Oct. 11, 2013). There, the court found the broker's Form U-4 and the FINRA rules bound the broker to arbitrate claims arising from his termination of employment, noting that "other district courts within the Sixth Circuit have uniformly deemed employment-related claims—including claims regarding alleged conduct occurring after termination of employment—between brokerage firms and their agents as disputes 'arising out of the business activities of FINRA members.'" *See id.* at *4 (citations omitted). Thus, the court held that the broker's claims that his former employer used confidential information to his detriment following his termination were required to be arbitrated under Rule 13200. *See also USB Fin. Servs., Inc. v. Carilion Clinic*, 706 F.3d 319, 328 (4th Cir. 2013).

Plaintiffs oppose USB's motion on the basis that their Confidentiality & Non-Disclosure Agreements did not contain arbitration provisions. (Pl.'s Resp. to Mot. to Compel Arbitration 3-4, DN 12). While factually accurate, the absence of arbitration provisions in those agreements

does not negate the independent basis for arbitration that exists by virtue of FINRA Rule 13200.[4] Instead, the broad language of the Form U-4 and FINRA Rule 13200 requiring arbitration of any "dispute, claim, or controversy" certainly encompasses the present action.

Plaintiffs rely upon the Ninth Circuit's decision in *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014), for the proposition that the Agreements supersede FINRA's arbitration rules. In refusing to order arbitration in *Goldman*, the Ninth Circuit recognized first that the obligation to arbitrate under FINRA can be altered by contract. *See id.* at 741. The court concluded that a forum-selection clause in a contract between the parties constituted a waiver of the FINRA rules where the clause recited that "all actions and proceedings . . . shall be brought in the . . . District of Nevada . . . ." *Id*. Though the *Goldman* court held that the parties' forum selection language superseded their "default obligation" to arbitrate under FINRA, the Agreements in the present case contain no similar covenant to litigate claims in a particular forum. *See id.* Instead, the Agreements merely provide that Hines and Mullins consented to the issuance of a restraining order or injunction to restrain their breach of the agreement, which is a far cry from a blanket stipulation that all disputes *must be pursued* in a particular forum. Thus, there is no contractual provision in the Agreements to overcome the parties' obligation to arbitrate, which renders *Goldman* inapposite.

With respect to the third and fourth tasks under *Stout*, the Court finds that neither applies. There are no federal statutory claims asserted, thus no issue of Congressional intent regarding arbitrability of such claims. Further, all claims in this matter are subject to arbitration, so there is no consideration of a stay for any nonarbitrable claims. As noted above, all of the claims are subject to the broad arbitration provision of Form U-4s and FINRA Rule 13200.

---

[4] Through Plaintiffs' argue that the Agreements are not supported by consideration, the substance of these claims it will ultimately be determined by the arbitrator(s).

7

For the reasons outlined above, the Court holds that this action must be arbitrated. Because all of the claims herein must be referred to arbitration by virtue of Form U-4 and FINRA Rule 13200, the Court will grant Defendant's motion to compel arbitration and dismiss the case. *W. IP Commc'ns, Inc. v. Universal Fid., L.P.*, No. 3:14CV-357-JHM, 2014 WL 4437662, at *3 (W.D. Ky. Sept. 4, 2014) ("[L]itigation in which all claims are referred to arbitration may be dismissed." (citing *Hensel v. Cargill, Inc.*, 198 F.3d 245 (6th Cir. 1999) (unpublished table decision))).

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration and Dismiss or, in the Alternative, Stay Litigation Pending Arbitration (DN 5) is **GRANTED**. Therefore, Plaintiff's Motion for Summary Judgment (DN 6) and Defendant's Motion to Hold Plaintiff Mullins' Motion for Partial Summary Judgment in Abeyance (DN 10) are **DENIED AS MOOT**. This case is **DISMISSED** and **STRICKEN** from the Court's docket.

**Greg N. Stivers, Judge**
**United States District Court**
April 7, 2016

cc: counsel of record

8